IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 10, 2012

## RICKY TERRELL COX v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Lauderdale County**
**No. 8003B      Joseph H. Walker, III, Judge**

_____

**No. W2010-02460-CCA-R3-PC - Filed April 26, 2012**

_____

The petitioner, Ricky Terrell Cox, appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in finding that he received effective assistance of trial and appellate counsel. Following our review, we affirm the denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

Mark E. Davidson, Covington, Tennessee (on appeal); and George Douglas Norton, Jr., Ripley, Tennessee (at hearing), for the appellant, Ricky Terrell Cox.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; D. Michael Dunavant, District Attorney General; and Julie K. Pillow, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

In 2007, the petitioner was convicted by a Lauderdale County jury of three counts of especially aggravated kidnapping, especially aggravated burglary, aggravated assault, attempted second degree murder, and being a felon in possession of a firearm, for which he received an effective sentence of thirty-one years in the Department of Correction. The petitioner's convictions and sentences were affirmed by this court on direct appeal, and our supreme court denied his application for permission to appeal. State v. Ricky Terrell Cox, No. W2007-01371-CCA-R3-CD, 2009 WL 416000, at *1 (Tenn. Crim. App. Feb. 19, 2009), perm. to appeal denied (Tenn. June 15, 2009).

Our direct appeal opinion reveals that the petitioner's convictions stemmed from his April 30, 2006 participation with accomplices in breaking into Chris Alston's home with the intention to rob him of cash and drugs. Id. at * 4. Alston testified at trial that the petitioner was armed with a pistol and that one of his accomplices was armed with a crowbar. Id. He said that when he told the men he had no money or drugs, they beat him with the crowbar and the pistol, kicked him several times, "hog-tied" him with an extension cord, and left him in the kitchen while they rummaged through the house. Id. As the men were searching the house, Alston managed to get loose and ran out the back door to a neighbor's house, where he banged on the window. Id. at *5. However, the petitioner and one of his accomplices, Michael Hayes, followed him and Hayes held his arm while the petitioner attempted to shoot him in the face with his gun. Id. The gun jammed, and both the petitioner and Hayes fled while Alston ran to a nearby market to summon help. Id. Lauderdale County sheriff's deputies responded to the scene by 11:50 p.m. Id. at *1.

Alston's girlfriend, Jennifer Paine, testified that the petitioner, who was armed with a gun, held her and her son confined to a bedroom of Alston's home as Alston was being beaten and the other men searched through the home. Id. at *3.

Michael Hayes testified on the State's behalf that he had pled guilty to the attempted second degree murder of the victim because he deemed it in his best interest to do so. He denied having been present during the burglary but said that he had been with the petitioner and Ronnie Coleman on April 30, 2006 and had overheard Coleman talking with the petitioner about robbing the victim. Id. at *6.

The petitioner denied any involvement in the crimes, testifying that he had spent the evening of the burglary drinking at home with friends before leaving at about midnight for his girlfriend's house, where he spent the remainder of the night. Id.

On June 21, 2010, the petitioner filed a *pro se* petition for post-conviction relief, followed by an amended petition after the appointment of counsel, in which he raised claims of ineffective assistance of trial and appellate counsel. Although the petitioner alleged a number of instances of ineffective assistance in his petitions and at the evidentiary hearing, he confines himself on appeal to arguing that trial counsel provided ineffective assistance by failing to properly consult with him regarding possible defenses, failing to properly investigate the case, failing to request a preliminary hearing, failing to present an alibi defense, and failing to keep him adequately informed of the proceedings and any plea offers by the State. The petitioner additionally alleges that both trial and appellate counsel were ineffective for failing to recognize and raise a State v. Anthony, 817 S.W.2d 299 (Tenn. 1991), challenge to his aggravated kidnapping convictions.

At the evidentiary hearing, the petitioner testified that, other than a day in January when trial counsel briefly introduced himself as his lawyer, counsel met with him on only two occasions – two days before trial and on the day of trial. He said that counsel never provided him with any discovery, discussed the evidence or any possible defenses, or informed him of any plea offers from the State. The petitioner stated that he told trial counsel that he never had a preliminary hearing and asked him to request one but that trial counsel told him it was "too late."

The petitioner further testified that two days before trial he gave counsel the names of potential alibi witnesses Stanley Crawford, Shedell Dowell, Ronnie Coleman, Michael Howard, Ricky Carter, and Russell Carter, but counsel did not call them to testify at his trial. He believed that, had counsel called those witnesses to testify, the jury would have "heard [his] side of the story" and the outcome of his trial would have been different. As for his appellate counsel, the petitioner complained that he did not include every issue that the petitioner wanted him to raise in the appeal, instead telling the petitioner by letter that he did not want to "water the appeal down" by raising too many issues.

On cross-examination, the petitioner acknowledged that he did not provide trial counsel any addresses or telephone numbers for his proposed alibi witnesses and that two of those proposed witnesses, Ronnie Coleman and Stanley Crawford, were co-defendants who had pled guilty in connection with the case. He further acknowledged that appellate counsel sent him at least four letters regarding the status of his appeal. He also revealed that he never mentioned, prior to the filing of his appellate brief, any specific issues that he wanted raised in the appeal.

The petitioner's trial counsel testified that he had been licensed to practice law for the past six or seven years, during which time he had handled somewhere between five and ten jury trials. He was appointed to represent the petitioner sometime prior to January 2007 and met with him for the first time on January 8, 2007, in a meeting at the jail that lasted two and a half hours. According to his records, he also met with the petitioner on February 16, February 20, February 24, and February 25, 2007, the day before the trial. Among other things, he reviewed discovery with the petitioner and discussed possible defenses and the evidence against him, which included the co-defendants' statements to police and their later guilty plea allocutions before the court.

Counsel testified that the petitioner maintained from the beginning that he was not present during the crimes. He said that during their February 16 meeting, the petitioner gave him the following names and brief identifying information with respect to potential defense witnesses: "William Matthews" of Memphis who worked at 201 Poplar; "Kevin Bates," a fireman in West Memphis; "Nathan"; "Tracy Harden" of West Memphis who worked at

Shoney's; "Ricky Carter" of West Memphis who owned a body shop; and Ronnie Coleman's girlfriend, "Shedell." Counsel said that he attempted to contact those witnesses and eventually got in touch with one of them, a cousin of the petitioner's who brought the petitioner some clothes to wear at trial. When, however, he asked that potential witness about testifying, the man replied, "You don't want me to testify." Counsel stated that he would not have called any of the petitioner's co-defendants to testify because their testimony would have hurt, rather than helped, the petitioner's case.

Counsel testified that he informed the petitioner that two of the State's witnesses were going to positively identify him as one of the perpetrators and advised him that his claim of not having been present would not be the strongest defense, but the petitioner was adamant about not having been involved. Although counsel believed he was hampered by the petitioner's insistence that he had nothing to do with the crimes, he thought he zealously represented the petitioner and did the best job he could in preparing for trial and presenting a defense. He could not specifically recall having reviewed the Anthony case during his research for the trial but felt confident that he had. He also agreed that the facts of the case would not have supported a successful Anthony argument because the confinement of the victims was separate and distinct from the attempted robbery. On cross-examination, trial counsel testified that he thought there had probably been a plea offer in the case and, if so, he would have discussed it with the petitioner. He said he could not remember any discussions with the petitioner about holding a preliminary hearing.

Appellate counsel testified that he raised on appeal what he felt were the strongest issues that had been preserved in the motion for new trial. Although he reflected on the Anthony case in his preparation of the brief, he did not think an Anthony argument would have been successful given the facts of the petitioner's case.

On October 20, 2010, the post-conviction court entered an order in which it found that the petitioner failed to show a deficiency in the performance of either trial or appellate counsel or any resulting prejudice to his case based on any alleged deficiency on the part of either counsel. The court, therefore, denied the petition for post-conviction relief. This appeal followed.

**ANALYSIS**

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2006). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate

-4-

court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687 (1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The same principles apply in determining the effectiveness of trial and appellate counsel. Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995).

Because both prongs of the test must be satisfied, a failure to show either deficient performance or resulting prejudice results in a failure to establish the claim. See Henley, 960

S.W.2d at 580. For this reason, courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

The petitioner contends that trial counsel was ineffective for failing to adequately investigate his case and properly review the evidence against him, for failing to meet with him to discuss the case and possible defenses, for failing to request a preliminary hearing, and for failing to keep him informed of the proceedings and any possible plea offers. The record, however, fully supports the findings and conclusions of the post-conviction court that the petitioner failed to meet his burden of showing either a deficiency in counsel's representation or prejudice to his case.

Trial counsel's testimony, which was accredited by the post-conviction court, established that he met with the petitioner at least five times before trial, thoroughly reviewed with the petitioner the evidence in the case, and fully discussed their defense strategy. Counsel also attempted to locate the proposed alibi witnesses from the sparse information that was supplied to him by the petitioner. However, the only one he was able to contact informed him that he would not testify favorably to the petitioner. As for the co-defendants, counsel determined from their statements and later allocutions that they would not be favorable witnesses in the petitioner's case. We note, as did the post-conviction court, that the petitioner also failed to present these proposed alibi witnesses at the evidentiary hearing. In order to succeed on a claim that counsel did not properly investigate or call favorable witnesses at trial, a petitioner must generally elicit favorable testimony from those witnesses at the evidentiary hearing, as a post-conviction court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

The petitioner also failed to show that his trial or appellate counsel was deficient for failing to raise an Anthony argument to his kidnapping convictions or that he was prejudiced as a result of their failure to do so. Trial and appellate counsel each expressed the belief that an argument that the kidnappings were merely incidental to the attempted robbery would not have been successful under the facts of the case. Appellate counsel additionally testified that he thoroughly reviewed the case and raised only the issues that he thought had the best chance of success on direct appeal. We conclude, therefore, that the post-conviction court properly denied the petition for post-conviction relief.

## CONCLUSION

We conclude that the petitioner has not met his burden of showing a deficiency in the performance of either his trial or appellate counsel or any resulting prejudice to his case. Accordingly, we affirm the denial of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE